UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
ADRIANO GIANNETTI DEDINI OMETTO
and ADRIANO OMETTO AGRÍCOLA
LTDA.,

                       Petitioners,

      vs.

ASA BIOENERGY HOLDING A.G.;
ABENGOA BIOENERGIA AGRÍCOLA
LTDA.; ABENGOA BIOENERGIA SÃO
JOÃO LTDA.; ABENGOA BIOENERGIA
SÃO LUIZ S.A.; and ABENGOA
BIOENERGIA SANTA FÉ LTDA.,

                       Respondents.

------------------------------------------------------------x

Civil Action No.: 12 Civ. 1328 (JSR)

Removed From:

Supreme Court of the State of New York,
County of New York
Index No. 650113/2012

# RESPONDENTS' POST-HEARING MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO CONFIRM ARBITRATION AWARDS AND IN OPPOSITION TO PETITIONERS' MOTION TO VACATE ARBITRATION AWARDS

SHEARMAN & STERLING LLP

**TABLE OF CONTENTS**

                                                                                                         **Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I.     SECOND CIRCUIT LAW ON "EVIDENT PARTIALITY" IS CRYSTAL CLEAR .............................................................................................................. 1

        A.     The Second Circuit's Test for "Evident Partiality" .................................... 1

        B.     "Evident Partiality" Is Personal to the Arbitrator and Constructive Knowledge Is Irrelevant ............................................................................. 2

II.    THE RECORD ESTABLISHES THERE WAS NO EVIDENT PARTIALITY ...................................................................................................... 3

        A.     There Is No Evidence of Partiality in Mr. Rivkin's Chairmanship of the Arbitrations ..................................................................................... 3

        B.     Mr. Rivkin Had No Knowledge of the Matters Raised by Ometto Until After the Final Awards Were Issued .................................................. 4

        C.     Mr. Rivkin Acted Appropriately in Accepting the Tribunal Chairmanship ............................................................................................ 5

        D.     The Debevoise Engagements Identified by Ometto Are Irrelevant ............ 8

CONCLUSION ....................................................................................................................... 9

## **TABLE OF AUTHORITIES**

### **CASES**

*Application of David Siegal,* 153 N.Y.S.2d 673 (N.Y. Sup. Ct. 1956)............................................3

*Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi*, 492 F.3d 132
 (2d Cir. 2007).............................................................................................................2

*Morelite Constr. Corp. v. N.Y. City Dist. Council Carpenters Benefit Funds*,
 748 F.2d 79 (2d Cir. 1984)......................................................................................1, 2

*Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60
 (2d Cir. 2012).................................................................................................. *passim*

*Schmitz v. Zilveti*, 20 F.3d 1043 (9th Cir. 1994)............................................................................2

### **STATUTES**

9 U.S.C. § 10...................................................................................................................................1

Extensive document production by Debevoise & Plimpton ("Debevoise") and the cross-examination of David Rivkin have only bolstered Abengoa's position that there was no "evident partiality" in the conduct of the Ometto Arbitrations.  Ometto has not come close to meeting his burden of demonstrating that a reasonable person would have to conclude that Mr. Rivkin was partial to the Respondents.  Accordingly, Ometto's vacatur application should be denied, and the Awards confirmed and enforced.[1]

## I.     SECOND CIRCUIT LAW ON "EVIDENT PARTIALITY" IS CRYSTAL CLEAR

### A.     The Second Circuit's Test for "Evident Partiality"

The Second Circuit's test for "evident partiality" under the FAA is clearly set forth in two seminal cases:  *Morelite* (1984) and *Scandinavian Reinsurance* (2012).  In *Morelite*, the Second Circuit established that "'[e]vident partiality' within the meaning of 9 U.S.C. § 10 will be found where a reasonable person would *have to* conclude that an arbitrator *was partial* to one party to the arbitration."  *Morelite Constr. Corp. v. N.Y. City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir. 1984) (emphasis added).  Twenty-eight years later, in *Scandinavian Reinsurance*, the Second Circuit reaffirmed *Morelite*, stating that "the FAA provides for vacatur of arbitral awards whenever it is 'evident' that an arbitrator *was 'partial[]' to one of the litigating parties*" and that the evident partiality standard requires that the arbitrator be "predisposed to favor one party over another" in the arbitration.  *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 73-74 (2d Cir. 2012) (citation omitted) (emphasis added).

---

[1]  Unless otherwise noted, all defined terms are defined in Respondents' Memorandum of Law in Support of Their Motion to Confirm Arbitration Awards and in Opposition to Petitioners' Motion to Vacate Arbitration Awards ("Mot. to Confirm") (Dkt. No. 18) and Respondents' Reply Memorandum of Law in Further Support of Their Motion to Confirm Arbitration Awards ("Reply Mot. to Confirm") (Dkt. No. 23).

In adopting the "would have to conclude was partial" test for evident partiality, the Second Circuit expressly rejected an "appearance" or "impression" of bias test: "[W]e read Section 10(b) as requiring a *showing of something more than the mere 'appearance of bias'* to vacate an arbitration award." *Morelite*, 748 F.2d at 83-84 (emphasis added). Further, the Second Circuit has repeatedly emphasized that arbitrator non-disclosure by itself does not constitute evident partiality; there must be evidence of bias. "[W]here an undisclosed matter is *not suggestive of bias*, vacatur based upon that nondisclosure cannot be warranted under the evident partiality theory." *Scandinavian Reinsurance Co.*, 668 F.3d at 73 (emphasis added). "The mere failure to investigate is not, by itself, sufficient to vacate an arbitration award"; it is only "when an arbitrator *knows* of a potential conflict, [that] a failure to either investigate or disclose an intention not to investigate is indicative of evident partiality." *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi*, 492 F.3d 132, 138 (2d Cir. 2007) (emphasis added). Of course, the party challenging an award bears the burden of proving evident partiality. *Scandinavian Reinsurance Co.*, 668 F.3d at 72.

### B. "Evident Partiality" Is Personal to the Arbitrator and Constructive Knowledge Is Irrelevant

In view of the uncontradicted evidence that Mr. Rivkin had no knowledge of the Debevoise engagements now cited by Ometto, Ometto relies heavily on notions of constructive knowledge in arguing evident partiality on the part of Mr. Rivkin. *Applied Industrial* is the only binding case Ometto cites in this regard, but the arbitrator in *Applied Industrial* had actual knowledge of the relevant business relationship when rendering his award. *Id.* at 139. Mr. Rivkin, in contrast, learned of the alleged conflicts well after the two Awards were issued.

The other authorities Ometto cites in support of a constructive knowledge standard for evident partiality are irrelevant: *Schmitz v. Zilveti, III*, 20 F.3d 1043, 1046 (9th Cir. 1994), is a

2

Ninth Circuit case applying a "reasonable *impression* of partiality" test for evident partiality, a test expressly rejected by the Second Circuit. *Application of David Siegal*, 153 N.Y.S.2d 673, 674 (N.Y. Sup. Ct. 1956), concerns the vacatur of an arbitral award rendered by an arbitrator who had "forgotten" he was a business partner with the sole owner of one of the parties.

The law is clear that what is relevant is Mr. Rivkin's actual knowledge at the time the two Awards were rendered.

## II.     THE RECORD ESTABLISHES THERE WAS NO EVIDENT PARTIALITY

### A.     There Is No Evidence of Partiality in Mr. Rivkin's Chairmanship of the Arbitrations

Mr. Rivkin has an impeccable reputation and many years of experience in the field of international arbitration. He has been involved in hundreds of arbitrations and has acted as an arbitrator in approximately 50 cases (in 25 to 30 of which he was the tribunal chair or the sole arbitrator). (*See, e.g.*, Abengoa Hearing Ex. A (Rivkin CV); July 20, 2012 Hearing Transcript ("Hearing Tr.") 61:22-62:18.) As Tribunal Chairman in the two Ometto arbitrations, Mr. Rivkin devoted a massive amount of time and energy, over 400 hours. (*See* Hearing Tr. 53:17-20.) Significantly, the other members of the Tribunal, José Emilio Nunes Pinto and Guillermo Aguilar-Alvarez, praised Mr. Rivkin's conduct of the Arbitrations and his Chairmanship as "independent, impartial and fair." (*See* Ometto's Hearing Exs. 19, 20.) The Final Awards are detailed, thorough, and highly rational, and leave no doubt as to their integrity. (*See* Awards, Exs. 2, 3 to Schorr Decl.) The only contrary "evidence" cited by Ometto is that he lost. (*See* Ometto's First Br. at 6-7.) As the Second Circuit has recognized, that is no proof of bias. *Scandinavian Reinsurance Co.*, 668 F.3d at 75.[2]

---

[2]     Any argument by Ometto that the Tribunal exhibited partiality by manifestly disregarding Brazilian law in determining the measure of damages for Abengoa's crushing capacity claim is without merit. As previously demonstrated, the arbitral record was replete with

3

### B. Mr. Rivkin Had No Knowledge of the Matters Raised by Ometto Until After the Final Awards Were Issued

Mr. Rivkin has stated consistently – in writing and in sworn testimony – that he had no knowledge of the matters raised by Ometto until he received Ometto's letter of December 21, 2011, which was one month after issuance of the Awards and almost three months after the Tribunal's transmission of the draft Awards to the ICC. There is no contrary evidence.

In his letter of January 8, 2012 to the ICC Secretariat, Mr. Rivkin stated that "because I was in fact unaware of [the matters raised by Ometto], these matters could not have affected, and did not affect, the procedures or the awards in these cases." (*See* Ometto Hearing Ex. 18 at 1.) Later in that letter, Mr. Rivkin reiterated that "because I did not know of [these matters], they could not have influenced me." (*Id*. at 3.) Then, in his email to the ICC Secretariat of January 26, 2012, Mr. Rivkin confirmed that "because I was in any event unaware of [the matters raised by Ometto], they had no influence on the awards in these arbitrations." (*See* Ometto Hearing Ex. 24 ¶ 4.) Again, and repeatedly, Mr. Rivkin testified before the Court that he only learned about the Debevoise engagements now relied upon by Ometto "[a]fter we [the Tribunal] had rendered the award when I received Mr. Ometto's counsel's letter on December 21, [2011]." (Hearing Tr. 13:22-23; *see also id.* at 14:25-15:1 ("I had not known about any of this at the time of the [awards]."); 16:8-15 (unaware of First Reserve transaction); 34:8-11 (unaware of payments by Abengoa Solar to Debevoise for its DOE work); 35:19-20 (same); 51:18-52:10 (no role in generating Debevoise's DOE engagement); 54:11-55:13 (first learned of DOE engagements via

---

authority supporting the measure of damages adopted by the Tribunal, *i.e.*, the difference between what Abengoa paid for the sugar mills and what Abengoa actually received. (*See* Mot. to Confirm 38-39; Reply Mot. to Confirm 8-12.) With respect to Ometto's arguments other than evident partiality, we respectfully refer the Court to Abengoa's previous briefing refuting such contentions. *See* Mot. to Confirm 36-48; Reply Mot. to Confirm 8-14.

4

Ometto's December 21 letter); 55:19-56:8 (first learned of First Reserve's acquisition of an interest in Abengoa via Ometto's December 21 letter).)

Mr. Rivkin's statements are supported by extrinsic evidence. Indicative of Mr. Rivkin's surprise upon receiving Ometto's December 21 letter is the fact that he immediately ran a conflicts check against the names identified in that letter. (*See* Abengoa Hearing Exs. F, G.) Also supportive of Mr. Rivkin's testimony is the fact that nobody working on the Arbitrations at Debevoise charged any time to the matters identified by Ometto (*see* Ometto Hearing Ex. 25 at B-3; Hearing Tr. 53:9-12), and the fact that the Arbitrations did not show up on the conflicts check run by others at Debevoise in connection with the DOE-Mojave project. (*See* Debevoise Conflicts Check No. 853-10, attached to August 7, 2012 Debevoise letter to the Court.)

Mr. Rivkin's lack of any personal knowledge of the matters now relied upon by Ometto is conclusively established.

### C. Mr. Rivkin Acted Appropriately in Accepting the Tribunal Chairmanship

Mr. Rivkin conducted a full conflicts check after being approached to serve as Tribunal Chairman in the First Arbitration in May 2009. The conflicts check covered both the parties to the arbitration <u>and</u> Abengoa. (*See* Ometto Hearing Ex. 1 at first page ("Names Searched"); Hearing Tr. 3:22-25.)

This initial conflicts check was "clean," meaning that there were no conflicting matters identified. The only "hit" for "Abengoa" was an old engagement for Debevoise client MBIA. That matter was irrelevant for multiple reasons: the last date on which time was billed was in January 2007 (more than two years before Mr. Rivkin became Chairman); Debevoise represented MBIA and not Abengoa; and no Abengoa entity paid any of Debevoise's legal fees for the services rendered to MBIA. (*See* Ometto Hearing Ex. 1 at DEBE0000150; Ometto

Hearing Ex. 28 ¶¶ 1-2; Hearing Tr. 7:16-19, 51:2-10.) Of course, none of the matters now cited by Ometto were on this conflicts check, as they all post-date it.

When additional parties were added to the Arbitrations, Mr. Rivkin instructed a colleague at the firm to enter the names of these additional parties into Debevoise's conflicts check system. (*See* Ometto Hearing Ex. 18; Hearing Tr. 10:6-11.) Unfortunately, as Mr. Rivkin advised in his January 8, 2012 letter to the ICC Secretariat and addressed at the oral hearing, due to administrative error, this did not occur. (*Id.*) Mr. Rivkin also considered the need for a separate conflicts check at the time of his appointment as Tribunal Chairman in the Second Arbitration in May 2010, but reasonably decided it was not necessary. Like the parties, Mr. Rivkin viewed the Second Arbitration as "simply being a continuation of the first matter" since it involved "the same parties, . . . the same dispute, . . . the same contract" and it concerned "simply additional claims." (*See* Hearing Tr. 25:11-15.) Unaware that an administrative mistake had occurred at Debevoise, Mr. Rivkin believed that the names of all the parties, including the parties whose name contained the word "Abengoa," had been entered into Debevoise's conflicts check system when the additional parties were joined in the First Arbitration. (*See id*. at 25:24-26:4.) Accordingly, Mr. Rivkin reasonably assumed that if anybody else at Debevoise conducted a subsequent conflicts check, they would have been made aware of his role in the Arbitrations, and the prospective new matter would have been brought to his attention. (*See id* at 26:9-13.) While that did not happen, Mr. Rivkin remained unaware of all of the subsequent engagements involving Abengoa. Indeed, any conflicts check that the partner responsible for DOE project – Ivan Mattei – might have run would, in any event, not have revealed Mr. Rivkin's role as arbitrator because, due to the administrative error, the additional Abengoa parties had not been entered into Debevoise's conflicts check system as Mr. Rivkin had instructed. When a conflicts

6

check was run in connection with the DOE-Mojave matter, that report did not pick up Mr. Rivkin's service as arbitrator. (*See* August 7, 2012 Debevoise letter to the Court at 3.)

Any flaws in the Debevoise conflicts check system and any mishaps in the conduct of any checks subsequent to Mr. Rivkin's first check, as unfortunate as they may be, cannot be charged to Mr. Rivkin (and certainly not to Abengoa). These errors are entirely irrelevant to the "evident partiality" analysis, which "at its core [is] directed to the question of bias." *See Scandinavian Reinsurance Co.*, 668 F.3d at 73. Such errors do not change the fact that Mr. Rivkin had no knowledge of the alleged conflicts, and that is what matters.

There can also be no question that Mr. Rivkin's conduct after he was alerted to the matters raised by Ometto on December 21, 2011 was conscientious and appropriate. He immediately started making factual inquiries (*see* Abengoa Hearing Ex. F, G), and responded in full (other than as to the amount of Debevoise fees charged to other clients) to the questions posed by Ometto's counsel (*see* Ometto Ex. 18). He then waited to see if his responses would satisfy Ometto and resolve the issue. (*See* Hearing Tr. 15:7-16, 45:23-46:2, 57:15-19.)

As Ometto persisted in its challenge to Mr. Rivkin's independence, he consulted with his co-arbitrators and the ICC Secretariat as to how best to respond. (*See, e.g.*, Hearing Tr. 15:8-20.) While his co-arbitrators and the ICC Secretariat advised Mr. Rivkin not to resign and to permit the ICC Court to consider the matter, in the face of Ometto's continued challenge, he concluded it "was in the best interests of the award[s]" to resign, as he did not want to compromise the Awards by ruling on Ometto's pending application under Article 29 of the ICC Rules for correction of the interest calculation relating to one of Abengoa's two claims. (*See id.* at 16:23-17:1.) Mr. Rivkin rightly surmised that Ometto might challenge the entirety of the Awards on the basis that he would have known of the investment by First Reserve in Abengoa at the time he

7

ruled on Ometto's Article 29 application.  (*Id.*)  Indeed, Ometto had made it clear that he believed that this fact would compromise Mr. Rivkin's ability to "rule on matters which are still before the Arbitral Tribunal" (Ometto Hearing Ex. 23 at 21), even though the First Reserve investment was "not a fact that [Mr. Rivkin] knew at the time" of the Awards.  (*See* Hearing Tr. 16:8-12.)  Despite Mr. Rivkin's belief "that [his] independence had not, in fact, been compromised," (*Id.* at 15:25-16:2) he considered it to be "one of [his] responsibilities . . . to both parties to protect any award that the tribunal has rendered" against any potential challenge (*see id*. at 16:10-11).  Mr. Rivkin's resignation was therefore not in any way an admission of bias, but a responsible act based on thoughtful consideration of the parties' interests and of Mr. Rivkin's duties as an arbitrator.

> **D.     The Debevoise Engagements Identified by Ometto Are Irrelevant**

The three Debevoise matters raised by Ometto are irrelevant under the Second Circuit's "evident partiality" test.  Mr. Rivkin only learned that Debevoise's occasional client First Reserve's had acquired an equity stake in Abengoa "[w]hen [he] read it in the December 21 letter . . . ."  (*See* Hearing Tr. 55:19-22.)  Debevoise did not represent First Reserve in its Abengoa investment, and no one at Debevoise even knew about the First Reserve investment in Abengoa until October 3, 2011, which (coincidently) is the day the Tribunal submitted the Awards to the ICC Secretariat for scrutiny.  (*See* Abengoa's Hearing Ex. J; Hearing Tr. 47:2-3, 47:12-14, 55:19-56:8.)  This matter cannot be relevant.

Debevoise's work for the DOE is, likewise, irrelevant.  Again, and most fundamentally, Mr. Rivkin was entirely unaware of those engagements until he received Ometto's letter of December 21, 2011. (Hearing Tr. 54:11-20.)  That is to be expected, as Mr. Rivkin did not work for the DOE, was not responsible for the Debevoise relationship with the DOE, and did not

discuss the matter with others at Debevoise until long after the Awards were issued. (*See* Hearing Tr. 51:18-20, 51:21-52:7, 55:3-56:8.)[3]

It is also beyond doubt that the DOE – not Abengoa – was Debevoise's client, no matter how Ometto now tries to re-characterize that relationship. (*See, e.g.*, Ometto Hearing Exs. 2, 5, 8.) The payments made by Abengoa to Debevoise were in payment of the DOE's bills, as is "a routine matter for the lenders generally" (*see* Hearing Tr. 31:17-18), and Debevoise's only duty and attorney/client relationship was with the DOE. (*See, e.g.*, Ometto Hearing Ex. 5, 8; Hearing Tr. 33:15-16 ("[T]he firm had no . . . contract[ual] obligations to Abengoa.").) The DOE was the sole source of instruction and future work flow for Debevoise, not Abengoa. (*See* Ometto Hearing Ex. 5, 8; Hearing Tr. 30:24-31:4, 39:5-9.) Debevoise owed no duty to Abengoa in relation to its work for the DOE, and the outcome of the Arbitrations would have had no impact on Debevoise's client, the DOE. (*See id.*)[4] In terms of Mr. Rivkin's impartiality, the matter is irrelevant.

## CONCLUSION

For the foregoing reasons, the Second Circuit's "evident partiality" test has certainly not been met. There is no evidence before this Court on the basis of which a "reasonable person would have to conclude" that Mr. Rivkin "was partial" to Abengoa in the Arbitrations. Ometto's other arguments are also unfounded. Accordingly, Petitioners' motion to vacate the Final

---

[3]  Mr. Rivkin did not see the Debevoise internal newsletter discussing Abengoa Solar (which was circulated on September 26, 2011, just a week prior to the Tribunal's submission to the ICC of the draft Awards) until recently. (*See* Ometto Hearing Ex. 10; Hearing Tr. 42:18-19 ("The first time I saw this was when I was told that it had been found in response to [Ometto's] subpoena.").) Mr. Rivkin only reviewed internal Debevoise lists of new matters sporadically. (Hearing Tr. 41:14-42:14.)

[4]  For the reasons discussed above, the MBIA matter, which was the only matter that appeared on Mr. Rivkin's initial conflicts check, is irrelevant.

9

Awards should be denied and Respondents' motion to confirm the Final Awards should be granted.

Dated: New York, New York
August 13, 2012

Respectfully submitted,

SHEARMAN & STERLING LLP

By: /s/ Henry Weisburg

Henry Weisburg
Fernando Mantilla-Serrano
Anna Tevini (admitted only in Germany)
Andrew Rodgers
599 Lexington Avenue
New York, NY 10022-6069
Tel: (212) 848-4000
Fax: (646) 848-4000
Email: hweisburg@shearman.com

*Attorneys for Respondents*

10