UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
ADRIANO GIANNETTI DEDINI OMETTO and    :
ADRIANO OMETTO AGRICOLA LTDA.,         :
                                       :
              Petitioners,             :
                                       :        12 Civ. 1328 (JSR)
          -v-                          :
                                       :
                                       :        MEMORANDUM ORDER
ASA BIOENERGY HOLDING A.G.; ABENGOA    :
BIOENERGIA AGRÍCOLA LTDA.; ABENGOA     :
BIOENERGIA SÃO JOÃO LTDA.; ABENGOA     :
BIOENERGIA SÃO LUIZ S.A.; and ABENGOA  :
BIOENERGIA SANTA FÉ LTDA,              :
                                       :
              Respondents.             :
---------------------------------------- x



JED S. RAKOFF, U.S.D.J.

          Petitioners Adriano Giannetti Dedini Ometto and Adriano

Ometto Agricola Ltda. (collectively, "Ometto") bring this motion to

vacate two arbitration awards issued on November 21, 2011 in ICC

Arbitrations numbered 16176/JRF/CA ("First Award") and 16513/JRF/CA

("Second Award") between Ometto and Respondents ASA Bioenergy Holding

A.G., Abengoa Bioenergia Agrícola Ltda., Abengoa Bioenergia São João

Ltda., Abengoa Bioenergia São Luiz S.A., and Abengoa Bioenergia Santa

Fé Ltda. (collectively, "Abengoa"). Petitioners also seek declaratory

judgment that the awards cannot be recognized or enforced. On March

23, 2012 Abengoa cross-moved for an order confirming the awards,

entering judgment in accordance with the awards, and awarding

prejudgment interest, costs, and attorneys' fees. On September 2,

2012, this Court issued a "bottom-line" order that denied

petitioners' motion to vacate the arbitration awards and granted respondents' cross-motion to confirm them. This Memorandum Order sets forth the reasons for that ruling and directs the entry of final judgment.

Pursuant to Article 12.9 of a share purchase agreement between Ometto and Abengoa ("the arbitration clause"), Abengoa prosecuted a number of claims against Ometto in two arbitrations held at the New York offices of Debevoise & Plimpton LLP ("Debevoise") and proceeding under the Rules of Arbitration of the International Chamber of Commerce ("ICC"). In accordance with the arbitration clause, the substantive law of Brazil applied to all claims. Three prominent arbitrators made up the two arbitration panels: David Rivkin, the chairman of both panels and a partner at Debevoise; Guillermo Aguilar-Alvarez, a partner at King & Spalding and lecturer at Yale Law School; and José Emilio Nunes Pinto, a partner at a Brazilian law firm bearing his name and participant in the drafting of Brazil's arbitration law.

The underlying dispute submitted by the parties to arbitration concerned Ometto's sale of a Brazilian sugar cane business to Abengoa in 2007. Abengoa arbitrated several claims, the most relevant of which on this petition are that Ometto intentionally misled it regarding the crushing capacity of its sugar-crushing mills; that Ometto failed to disclose a swap transaction that would

2

saddle the company with significant liabilities should the Brazilian real depreciate against the dollar; and that Ometto entered into a disadvantageous lease transaction with its Vista Alegre property during the "lock-up" period after the deal was consummated but before Abengoa took full ownership. The arbitration panels rendered two awards in favor of Abengoa on November 21, 2011. The awards found Ometto liable to Abengoa for damages in amounts totaling US$ 109,437,865.73 and R$ 17,977,539.42 plus interest,[1] inflation, and costs.[2] Additionally, the tribunal ordered Abengoa to release a guarantee provided by Ometto, First Award at ¶¶ 311-12, and ordered Ometto to indemnify Abengoa for certain liabilities it may incur under loan agreements with a third party, Second Award at ¶¶ 629-30.

The Federal Arbitration Act provides that a district court may vacate an arbitration award "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators . . .; (3) where the arbitrators were guilty of misconduct . . .; or (4) where the

---

[1] The tribunal applied various legal rates of interest to its damages calculation. In summary, it found that Ometto must pay interest at the rate of 9% per annum on the principal amount of US$ 109,437,86.73, as well as interest at the rate of 1% per month on the principal amount of R$ 17,977,539.42. Interest runs from September 26, 2007 to the date of payment. See First Award at 66-67 and Second Award at 127.

[2] Costs amount to US$1,380,713 for the first arbitration and US$2,636,426 for the second. See First Award at 65-66 and Second Award at 125-126.

arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made." 9 U.S.C. § 10(a). To these four statutory warrants for vacatur is added a fifth for "manifest disregard of the law," a doctrine that "remains a valid ground for vacating arbitration awards," T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 340 (2d Cir. 2010), in this Circuit despite somewhat elliptical guidance from the Supreme Court about its continued vitality. See generally Goldman Sachs Execution & Clearing, L.P. v. Official Unsecured Creditors' Committee of Bayou Group, LLC, 758 F.Supp.2d 222 (S.D.N.Y. 2010), aff'd, 2012 WL 2548927 (2d Cir. July 03, 2012).

Petitioners attack the awards by alleging: (1) that the tribunals' chairman, David Rivkin, was rendered evidently partial, both because his colleagues at Debevoise had advised clients regarding corporate transactions to which Abengoa was a counterparty and because Mr. Rivkin did not disclose these conflicts when required to do so by ICC rules; (2) that the tribunal acted in manifest disregard of the law; (3) that the tribunal failed to issue a mutual, final, and definite award; and (4) that the awards were procured through "fraud" or "undue means" as defined by the Federal Arbitration Act. The Court addresses each of these contentions in turn.

4

The arguments regarding Mr. Rivkin's alleged partiality arose after Ometto, upon receiving the tribunals' awards, and therefore facing an award of damages exceeding $110 million, "began conducting an extensive investigation into potential conflicts of interest of the Tribunal members[, ]which went well beyond normal due diligence." Pet'r's Mem. of Law in Support of Mot. to Vacate ("Ometto Mem.") at 6. Ometto's investigator discovered three occasions on which Debevoise attorneys advised clients regarding corporate transactions to which Abengoa (or an Abengoa affiliate) was a counterparty. First, Debevoise represented the Department of Energy in connection with the Department's subsidy of loan guarantees for Abengoa's solar energy projects in California and Arizona, and, pursuant to that arrangement, Abengoa paid Debevoise's fees. Second, Debevoise represented First Reserve Corp. in connection with its acquisition of a 15.9% interest in an Abengoa affiliate, and advised the DOE regarding whether it should consent to First Reserve's investment.[3] Third, Debevoise represented Schneider Electric in its $2 Billion acquisition of an Abengoa subsidiary named Televent GIT SA. Id. 7-9.

---

[3] Ometto argues, and Abengoa disputes, that First Reserve's acquisition of a 15.9% stake makes it an "affiliate of Abengoa" and thus that Debevoise was directly employed by Abengoa. Because the Court declines to adopt Ometto's "constructive knowledge" theory that would impute Debevoise's conflicts to Rivkin for the purpose of assessing evident partiality, the Court need not reach this issue.

Ometto notes that "[n]one of the three conflicts mentioned . . . were readily discoverable during the arbitrations," id. at 9, and argues that Debevoise's provision of services to these clients -- regardless of Mr. Rivkin's knowledge of or participation in the engagements of his law firm -- constitute evident partiality in the arbitrator sufficient to vacate the awards. Ometto further alleges that once it brought these conflicts to Mr. Rivkin's attention, he "still did not disclose certain important pieces of information" and "refused to step down." Id. 10-11. Ometto makes much of Rivkin's initial refusal to recuse himself, arguing that his "admission" that "even if he had known of these conflicts . . . he would not have disclosed them" demonstrates his partiality no less "than if [he] had known about the conflicts and failed to disclose them." Id. at 26. Ometto also argues, relying principally on Ninth Circuit case law, that Mr. Rivkin should be charged with constructive knowledge of his law firm's engagements. Id. at 20, 26-27 (quoting Schmitz v. Zilveti, 20 F.3d 1043 (9th Cir. 1994) and citing Applied Industrial Materials Corp. v. Ovalar Makine Ve Ticaret Sanayi, 492 F.2d 79 (2d Cir. 1984)).

In their motion to confirm the awards, Abengoa responds that the record unequivocally establishes that Mr. Rivkin was unaware of the stated Debevoise conflicts until after the awards were issued and thus could not have been impaired by the type of bias

6

contemplated by the FAA's warrants for vacatur. Resp't's Mem. of Law in Support of Mot. to Confirm ("Abengoa Mem.") at 6. Thus, after Ometto brought its allegation of conflicts to the ICC, Mr. Rivkin replied that "because I was unaware of [the Debevoise engagements], these matters could not have affected, and did not affect, the procedures or the awards in these cases." Id. 29 (quoting January 8 Rivkin Letter, Quintana Decl., Ex. 15 at 1, 3). Abengoa notes that in response to Ometto's parallel protestations of bias before the ICC International Court of Arbitration, both of Mr. Rivkin's co-arbitrators issued statements that "Rivkin at all times conducted himself with absolute independence, impartiality, fairness, and professionalism." Id. at 30 (quoting January 9 Emails, Quintana Decl., Ex. 19 ).

Abengoa also contests Ometto's argument that this Court should apply a "constructive knowledge" principle in its enquiry into the partiality of the arbitrators. Abengoa notes that Applied Industrial, the only Second Circuit case cited by Abengoa in oblique support of a constructive knowledge standard is readily distinguishable from this case because the arbitrator whose bias was at issue had actual knowledge of the conflict. Abengoa Mem. at 26. Abengoa further argues that Ometto's extensive citations to the Schmitz case from the Ninth Circuit is inapt because that Circuit

7

applies a standard of "evident partiality" that is contrary to the law of this Circuit. Id.

After reviewing the parties' voluminous written submissions and hearing oral argument on both motions, the Court ordered an evidentiary hearing pursuant to Fed. R. Civ. P. 43(c) to assist its determination of facts relating to the alleged bias of David Rivkin. Both the Court and counsel for both parties were given the opportunity to propound questions to Mr. Rivkin, and the Court received a number of exhibits in advance of the hearing to aid its determination.

A party who opts for private arbitration over the civil judicial apparatus of the United States federal courts elects a system of review that will frequently give to it little comfort when it loses. The law in this Circuit is clear regarding the standard for "evident partiality," and follows from the "severely limited" review courts undertake of arbitral awards: this Court may only find "evident partiality" sufficient to vacate an award "when a reasonable person, considering all of the circumstances, would *have* to conclude that an arbitrator was partial to one side." Applied Industrial, 492 F.3d at 137 (emphasis in original) (internal quotation marks omitted). Accord Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co., 668 F.3d 60 (2d Cir. 2012). Thus, the arbitrator is quite "[u]nlike a judge, who can be disqualified in any proceeding in

which his impartiality might reasonably be questioned," Applied Industrial, 492 F.3d at 137 (internal quotation marks omitted).

The requirement that this Court must perceive partiality so clearly that it "would *have* to conclude" the arbitrator was biased before vacating the awards differs from the standard elaborated by the Ninth Circuit, which looks only for "an impression of possible bias." New Regency Productions, Inc. v. Nippon Herald Films, Inc., 501 F.3d 1101, 1108 (9th Cir. 2007). Thus, the petitioners' reliance on the Ninth Circuit case of Schmitz v. Zilveti to invite this Court to impute constructive knowledge from the Debevoise partnerships to Rivkin invokes precedent that is both non-binding on this Court and countermanded by the more circumspect view of "evident partiality" adopted by this Circuit.

With these principles in mind, the Court finds that there is no material evidence refuting Mr. Rivkin's sworn assertion that he was, in fact, completely unaware of the conflicts about which Ometto complains when he authored the awards. Ironically, Rivkin's lack of awareness was largely the product of his own administrative carelessness in the manner he undertook a conflicts check at the advent of the arbitration. When Rivkin was first approached to serve as chairman of the arbitration panel, he ran a conflicts check at Debevoise by instructing its records department to search the firm's system for phrases that would embrace all of the parties named here.

9

That search yielded only the matter "MBIA – Abengoa," in which Abengoa was not a client of the firm but rather a "borrower" from Debevoise client MBIA. (Ometto does not raise the MBIA engagement as an impermissible conflict in the instant petition.) Having satisfied himself that there were no impermissible conflicts, Rivkin accepted the appointment as chairman and opened up a new matter in the Debevoise system. However, when Rivkin drafted a "New Client/Matter" memorandum to open the new matter at Debevoise, he listed only "ASA Bioenergy" and "Ometto," and neglected to add the "Abengoa" parties. This was an obvious error. The Debevoise conflicts system at the time did not retain the information provided by Mr. Rivkin when he first searched for conflicts. Instead the system directed partners to designate "conflicts cross-references" when they prepared "New Client/Matter" memoranda after the conflicts search. As a consequence of Rivkin's error, when later Abengoa-related matters came across the Debevoise conflicts-check transom, the system did not register that Mr. Rivkin was involved in a matter to which "Abengoa" entities were a party and thus furnished clean conflicts reports to other partners. As a consequence, the partners who brought the DOE, First Reserve, and Schneider Electric matters in to Debevoise after Rivkin accepted the arbitration did not know of Rivkin's conflict with Abengoa entities. Similarly, the system failed to notify Rivkin of the potential new conflicts.

10

While it may be that the Debevoise "conflicts system" left much to be desired (Debevoise represents that it has since been improved), such a deficiency is not tantamount to "evident partiality." Nor is Rivkin's failure to list all of the claimants when he opened the new matter sufficient evidence of "bias" to rise to "evident partiality" under the law of this Circuit. It strains credulity to imagine that Rivkin, after previously searching the Debevoise system for both "Abengoa" and "ASA" conflicts, intentionally omitted "Abengoa" from the new matter record in the hope that his partners might therefore feel free to obtain future Abengoa business without knowing of any potential conflict or informing him of same. Thus the awards cannot be vacated on the ground of "evident partiality."

As to its second ground, Ometto argues that the tribunal acted "in manifest disregard of the law" in its damages calculations. More specifically, Ometto argues that the tribunal manifestly disregarded the duty to mitigate damages that Brazilian law imposes on Abengoa, as well as the Brazilian principle that a claimant may recover only actual damages (as against indemnification for future or hypothetical damages). Ometto Mem. at 29-31.

In considering whether an arbitral tribunal manifestly disregarded the law this Court considers "first, whether the governing law alleged to have been ignored by the arbitrators was

11

well defined, explicit, and clearly applicable, and, second, whether

the arbitrator knew about the existence of a clearly governing legal

principle but decided to ignore it or pay no attention to it."

Goldman Sachs Execution & Clearing, L.P. v. Official Unsecured

Creditors' Comm. of Bayou Group, LLC, No. 10-5049-cv, 2012 WL

2548927, at *1-2 (2d Cir. July 3, 2012). The standard is "exceedingly

difficult to satisfy" and "misapplication of an ambiguous law does

not constitute manifest disregard." Id. at *2.   A party moving to

vacate on grounds of manifest disregard must "demonstrate[] that the

panel intentionally defied the law." Id. Even if a tribunal does "not

explain the reason for [its] decision," id., this Court "will uphold

[the award] if [it] can discern any valid ground for it." Id.

     According to Ometto, Brazilian law imposes a duty to

mitigate arising from Civil Code Articles 187 and 422. See Ometto

Mem. at 29; Schorr Decl., Exs. 53-54. Ometto argues that it made the

tribunal aware of the purported duty to mitigate in its briefing

before it. Ometto Mem. at 14; see also Schorr Decl., Ex. 24 at ¶ 272

and Ex. 26 at ¶ 263. Ometto thus complains that because the Award did

not directly address the duty to mitigate, it likely did not take

account of it in computing damages. See Ometto Reply Mem. at 30.

     Abengoa responds that Ometto's interpretation of Brazilian

law was never squarely presented to the tribunal, and thus could not

12

have been manifestly disregarded. See Suppl. Decl. of Inigo Quintana at ¶ 4.

In determining an arbitrator's awareness of the law for purposes of a manifest disregard analysis, this Court must "impute only knowledge of governing law identified by the parties to the arbitration." Duferco Intern. Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 390 (2d Cir. 2003). Ometto's "duty to mitigate" argument comprised two short paragraphs in its briefing before the tribunal, and cited no cases -- indeed, the briefing to which Ometto refers the Court does not even use the terms "duty to mitigate," and there is no such duty to be found in the plain language of the cited provisions of the Brazilian Civil Code.[4]  Because, therefore, Ometto did not adequately present its legal theory to the arbitrators, Ometto's proposition that the arbitrators "disregarded" that law is without merit.

Ometto's second claim of the tribunals' "manifest disregard of the law" relates to the availability of prospective, rather than actual, damages under Brazilian law. That argument fares no better.

---

[4] The text of Article 187 of the Brazilian Code limits the holder of a right to "limits imposed by its economic or social purpose, by good faith or by good conduct" while Article 422 refers only to "principles of probity and good faith." See Schorr Decl., Exs. 53-54. Neither provision suggests the "instant impression" that Brazilian civil law imposes a duty to mitigate -- a fact confirmed by Ometto's need to supply this Court with new, judge-made, Brazilian precedents to shore up the supposed obviousness of the duty to mitigate. But none of this case law was presented to the arbitrators.

On Ometto's reading, a majority of the Tribunal awarded Abengoa $100 million for "lost profits" over the Brazilian arbitrator's dissent on the basis of Article 944 of the Brazilian Civil Code. The tribunal further "manifestly disregarded" the law, Ometto argues, in awarding Abengoa damages flowing from Ometto's restructuring of Ometto's "Vista Alegre" property after the share purchase agreement was signed so that Abengoa's taking of full ownership was delayed by a twenty-year lease. See Ometto Mem. at 40; Second Award at ¶¶ 486-89.

As to the issue of prospective damages under Brazilian law, the majority of the tribunal, far from "disregarding" the law, responded directly to Ometto's challenges when they rebutted the dissenting arbitrator's position:  "[t]he majority believes the damage occurred at closing by paying for a capacity that did not exist, not at a future time."  Compare Second Award at ¶ 209 with Second Award at 45 n. 25.  As to the second challenge regarding Ometto's sale of Vista Alegre to Abengoa, it is clear that the tribunal fully considered Ometto's factual argument that Abengoa suffered "no damages" when Ometto restructured the Vista Alegre contract and came to the unsurprising conclusion that "[o]wnership of a property in the present is not equivalent to ownership of the property in twenty years." Second Award at ¶ 484. The Court sees no reason, and, more importantly, has no statutory warrant, to disturb the tribunal's factual findings as to damages Abengoa suffered when

14

Ometto breached its duties under the share purchase agreement by leasing, rather than selling outright, the Vista Alegre property. Ometto's challenge is, as in so many "manifest disregard" petitions, "in reality, a quarrel with the arbitration panel's likely factual finding." Goldman Sachs, 758 F. Supp. 2d at 227.

As its third argument, Ometto asserts, in one paragraph, that the awards were not "mutual, final, and definite," "because" the Tribunal purportedly failed to address "a number of Ometto's key defenses." Ometto Mem. at 32. This is a non sequitur on its face. Moreover, each of the tribunals' 200-page awards fully resolved the parties' disputes, and further recite that the arbitrators had considered all issues put before them pursuant to their terms of reference. See First Award at ¶ 74 ("Any contention not specifically mentioned in our analysis has been rejected or determined to be irrelevant to our determinations.") and Second Award at ¶ 97 (same).

Finally, Ometto argues that the award was procured by fraud on the tribunal because e-mails between Abengoa's senior outside counsel, Abengoa's senior representatives on the transaction, and Abengoa's senior in-house counsel, circulated after the purchase agreement was signed but before closing, acknowledge that "[t]here is no obligation from [Ometto] to guarantee further results . . ." Ometto Mem. at 33 (quoting E-Mail from Richard Blanchet, Schorr Decl. Ex. 35). Ometto attempted to introduce these e-mails into the record,

15

but the tribunal ruled "that the Disclosed Emails evidencing the fraud were inadmissible." Id. at 34. Where, as here, the tribunal did in fact consider petitioner's argument that a party was committing fraud on the tribunal but rejected it, whether for lack of admissible evidence or otherwise, there can be no review of the issues by the district court. See Hakala v. Deutsche Bank AG, No. 01 Civ. 3366(MGC), 2004 WL 1057788, at *3 (S.D.N.Y. 2004). Even assuming the truth of Ometto's allegations, Ometto both discovered the e-mails and presented them to the tribunals; Ometto simply did not obtain the result it wished when the tribunal deemed them inadmissible.

Having considered all of Ometto's grounds for vacatur and having found them to be without merit, the Court hereby grants Abengoa's motion to confirm the awards and denies Ometto's motion to vacate them. Abengoa also seeks prejudgment interest in accordance with the awards, as well as its costs and fees incurred in its proceedings before this Court. Pursuant to Fed. R. Civ. P. 54(d)(1), the Court finds that Abengoa is entitled to costs. However, since Ometto did not act "without justification" in bringing this petition to vacate the Awards, Abengoa's request for attorneys' fees is denied. See Int'l Chem. Workers Union, Local No. 227 v. BASF Wyandotte Corp., 774 F.2d 43, 47 (2d Cir. 1985). Accordingly, the Clerk of the Court is directed to enter final judgment dismissing Ometto's petition to vacate the arbitration awards, granting

16

Abengoa's petition to confirm them, granting Abengoa's request for

costs, and denying Abengoa's request for fees.


Dated:     New York, NY
           January ⏋, 2013                    _____
                                              JED S. RAKOFF, U.S.D.J.


17